JOHN RILEY *v.* THE OCEAN INSURANCE COMPANY.

There can be no abandonment as for a total loss, in a case in which the damage is under fifty per cent of the value of the thing insured.

Where the policy provides that the vessel insured is warranted free from average, unless general, under fifteen per cent, the limitation forms a part of the contract, and the insurers will not be liable unless the loss is proved to have exceeded th at amount.

APPEAL from the District Court of the First District, *Buchan-an*, J.

GARLAND, J. This action is on a policy of insurance on " the body, engine, tackle, apparel and other furniture" of the steamer Ellen Douglass, for four months, at and from the 8th of April, 1840. The perils assured against are of the river and fire, and all that shall come to the hurt, detriment, or damage of the said vessel. The policy is for $4,000, and, by agreement, the steamer, engine, &c. are valued at $20,000 without further account in case of loss. The steamer, &c., is warranted free from average " under fifteen per cent, unless general." An insurance for $6,000 had previously been taken in the Protection Office, at Natchez; and another for $8,000 in another office in that city, both of which are endorsed on the policy.

The petition is in the usual form, claiming the amount of the policy and certain expenses incurred in saving a portion of the wreck, and giving credit for a sum for which the boat and engine sold. The answer denies generally all the allegations, and specially that the plaintiff had any interest at the time of the loss. It is also averred, that the defendants have good cause for believing, and do believe the said steamboat was set on fire with a view to defraud the underwriters.

The evidence is that the Ellen Douglass was an old boat, having been running for five or six seasons. One witness, who was a clerk for some time on her, says that she " was six and a half years old when she was burnt."

After the last insurance was effected, the boat continued to run on the Mississippi and Ohio rivers, until about the early part of June, when she was carried to Louisville for the purpose of having some repairs made on her. On the 12th of that month,

the plaintiff wrote to a co-proprietor of the vessel, that he had consulted with ship carpenters about the repairs, and found that it would cost more to repair her to make her good for two years, than they could afford to expend on her; wherefore he had thought it most advantageous, not being able to sell her at private sale, to put her up at auction, one-half payable in cash and the other at six months credit, when she was sold for $1,300. He says he could buy her then for the same money, and perhaps would. The real fact is, there was no sale of the boat, as the person to whom she was adjudged swears, he had been requested by the plaintiff to bid on her, to prevent a sacrifice. He never paid any thing, did not take possession, nor was any sale ever made in writing, or otherwise. About the 4th of July, the plaintiff carried the steamer to New Albany, a short distance from Louisville, where he proposed to have some repairs made to her hull and engine. Some of the witnesses say, that he spoke of converting her into a boat for towing vessels to and from New Orleans to the passes at the mouth of the river; others understood that his purpose was to strengthen her, so as to be able to tow ships and other vessels on the river above the city. At New Albany the engine was taken out, with the exception of the shafts and fly-wheel, and, at the time of the fire, a part of it was in a foundery, and a part on the wharf. All the furniture was taken out of the main cabin, and packed away in the aft or ladies cabin, the doors of which were locked and the windows nailed down. A careful and experienced watchman was put on board to take care of the vessel, and on the evening of the 7th of July, about five or six o'clock in the afternoon, the vessel being safely moored, the plaintiff left her, and, with two of his slaves, went to Louisville. The watchman swears, that no one was sleeping in the ladies cabin, or had slept there for several nights previously; that there was no fire on board the boat; and that when he went to bed, about nine o'clock, no light was left burning. About midnight a fire broke out in a state room in the ladies cabin, and, before it could be arrested by the firemen and others, the whole of the cabin where it commenced was consumed, with all the furniture, and the main cabin was destroyed as far forward as within six or eight feet of the *social-hall*, or

forward cabin. There were only a few chairs and a bed in the main cabin, which were saved.

The witnesses generally concur as to the time and manner of the fire's appearing, but there is some discrepancy as to the extent of the damage, and much more as to the value of what was destroyed. One or two of the witnesses, assuming that it was the intention to convert the steamer into a tow boat, say the damage was small, as it would have been necessary to take off the cabin at any rate, and therefore it was no great loss. They think an expense of seven or eight hundred dollars would be sufficient to fit the vessel for towing ships, &c., to the mouth of the river. One ship carpenter who was present at the fire, and saw the boat before and afterwards, estimates the damage at $1,200; another says $2,000; a third witness says $2,500; and the clerk of the boat, who knew all about the furniture, swears it would have taken $4,205, according to his estimate, to replace every thing. The engine was not injured at all; nor the hull, except by a small hole cut into the side, for the purpose of scuttling her. That was repaired for $3. The day after the fire the plaintiff returned to New Albany, made a regular protest, and abandonment of the wreck to the underwriters; and, assuming the character of their agent, about two months after, sold the hull, engine, &c., at public auction, when it was adjudicated to one Isaac Wright for $600. Whether he ever paid any thing for the wreck, or took possession of it, we are not informed; but shortly after we find the plaintiff in possession, and bringing a large cargo to New Orleans, having the hull towed down, and taking out the engine and machinery to put them in another boat. The record does not inform us when notice was given to the defendant of the loss or abandonment, though it is admitted that an abandonment was sent to the office, but not accepted. No directions were given to plaintiff after the fire, nor any steps taken to prevent his selling the boat, although more than two months elapsed between the fire and the sale.

The jury found a verdict for the plaintiff, assessing his damages at $2,000, and from the judgment based on it the defendants have appealed.

The verdict of the jury negatives the allegation made by the

defendants, that the steamer was set on fire to defraud the underwriters ; and we do not find in the record sufficient evidence to induce us to say that the verdict is incorrect on that point.

Assuming the valuation fixed by the parties in the policy as the actual value of the vessel, engine, furniture, &c., and the plaintiff has furnished us with no other, an examination of the testimony satisfies us, that it is not a case in which an abandonment can be made as for a total loss. The damage is not pretended to exceed fifty per cent of the value ; and if such a pretension were advanced, it would be repelled by the evidence. The highest estimate of the loss is $4,205, which is but little more than one-fifth of the value expressed in the policy.

The question now arises, whether the plaintiff can recover for an average or partial loss. The counsel for the defendant contends that he cannot, as the loss is not fifteen per cent of the value, and the insurers are warranted free from average, unless general, under that amount.

Policies generally contain a provision, in the form of a memorandum or otherwise, that the underwriters are not to be liable for any particular average, whether on vessel or freight, or any article of merchandise other than those enumerated in the memorandum, unless it amount to a certain rate per cent. 2 Phillips on Ins. 477. Particular average and partial loss mean the same thing in effect, and when there is an exception, or limitation as to the extent of the loss for which the underwriters shall be liable, it forms a part of the contract, and protects them unless the damage is proved to exceed a certain per centage. If we admit, for the argument, that on a policy in which a value is fixed on the object insured, the question of value can be opened when a partial loss takes place, (a question we do not decide,) we shall then see in what position it places the plaintiff. As we have before said, he has not shown us, otherwise than by the estimate in the policy, what the actual value of the Ellen Douglass was at the time of the loss. We must then take $20,000 as her value ; and unless the damages amount to fifteen per cent, on that sum, the plaintiff cannot recover.

The clerk of the plaintiff swears, that it would take $4,205 according to his estimate, to replace every thing. Suppose this

to be true, it must be recollected that the estimate of which the clerk speaks, would make every thing new; and, according to another well settled rule, there must be a deduction of one-third of the cost, on the principle of new for old. Deduct one-third from the estimate, and the actual damage will be about $2,800.

But three other witnesses testify as to the damage, and the highest estimate is $2,500. When we find such a wide discrepancy in the estimates and opinions of witnesses, it is perhaps about fair to adopt a medium course; and as the weight of the testimony fixes the damage under $3,000, or fifteen per cent of the value, we are of opinion that the defendants are not liable, being protected by the warranty in the memorandum.

It is ordered and decreed that the judgment be annulled and reversed, and that there be judgment in favor of the defendants, with costs in both courts.

*F. H.*, and *W. S. Upton*, for the plaintiff.

*F. B.*, and *C. M. Conrad*, for the appellants.